IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Eugene S. CALHOUN, Attorney at Law.

Supreme Court

*No.  94–1770–D.  Submitted on briefs September 7,
1995.—Decided October 24, 1995.*

(Also reported in 538 N.W.2d 797.)

For Eugene S. Calhoun there were briefs by *Jack
R. DeWitt* and *DeWitt, Ross & Stevens, S.C.*, Madison.

665

For the Board of Attorneys Professional Responsibility there was a brief by *Elsa P. Green*, counsel, Madison.

PER CURIAM. Attorney Eugene S. Calhoun appealed from the recommendation of the referee that his license to practice law be suspended for three years as discipline for conduct that resulted in two convictions for possession and delivery of cocaine and for numerous misrepresentations to the sentencing court, the prosecutor and physicians concerning his use of cocaine and the type of treatment for addiction he pursued. We determine that the seriousness of Attorney Calhoun's misconduct warrants the recommended license suspension and we make its commencement retroactive to September 20, 1994, the date on which we summarily suspended Attorney Calhoun's license, upon motion of the Board of Attorneys Professional Responsibility (Board) when it filed the complaint in this proceeding, following his felony conviction of two counts of delivery of cocaine. In addition, we impose on Attorney Calhoun the conditions recommended by the referee to address his recovery from addiction.

Attorney Calhoun was admitted to practice law in Wisconsin in 1950 and practiced in Madison. He has not previously been the subject of an attorney disciplinary proceeding. In the instant proceeding, he agreed to plea no contest to the Board's complaint in return for which the Board urged the referee to recommend a one-year license suspension retroactive to the date of summary suspension as discipline. Thus, the facts found by the referee, Attorney Jean DiMotto, are not in dispute.

Attorney Calhoun began using cocaine in the spring of 1984 during a social outing with two clients

and others who knew he was a lawyer. Between that time and the spring of 1987, he ingested cocaine on most weekends. His drug use was known by some cocaine dealers, who would call him at his law office or at his home to arrange sales.

In March, 1987, Attorney Calhoun was treated briefly and informally for cocaine dependence but he declined his physician's recommendation that he enter a formal treatment program. His weekend use of cocaine continued and, beginning October, 1989, he was treated for two months as an outpatient at the McBride Center for the Professional, where he was diagnosed as having both a cocaine dependency and a dependency on percocet, an opiate classified as a controlled substance, which had been prescribed for pain. Treatment staff recommended that he either enter inpatient treatment or gradually discontinue using percocet but Attorney Calhoun refused to do so and his treatment was terminated.

Following that treatment and continuing at least through May, 1992, Attorney Calhoun began to inject cocaine intravenously and use the drug at his home, on some occasions with another person. During this time, he received medical treatment for intermittent infections in chest wounds he told his physician were caused by a series of accidents. By December, 1986, medical staff observed that the wounds might have been self-inflicted. In September, 1991, medical treatment uncovered parts of a needle cap in Attorney Calhoun's infected right breast. Two months later, when he returned to the clinic with another infection, an X-ray revealed the tip of a ballpoint pen in the same location.

The clinic then told Attorney Calhoun it would no longer provide him medical care because of the evidence that he had been inflicting chest wounds in order

667

to obtain prescriptions for percocet. The clinic warned him of the danger of the injuries and of the possibility that his self-infliction of wounds in order to get prescriptions for a controlled substance might constitute a criminal violation. Notwithstanding the McBride diagnosis and the clinic's determination, Attorney Calhoun testified under oath in September, 1994, during the Board's investigation, "Nothing I have done with percocet is abuse and nobody ever said that and that goes back to 1975."

Following his arrest after a traffic stop in May, 1992, Attorney Calhoun was charged with one misdemeanor count of cocaine possession. While that criminal case was pending, Attorney Calhoun was interviewed by a reporter of a national magazine who intended to publish an article about the drug charge pending against Attorney Calhoun. The January, 1993 issue of the magazine included that article, quoting Attorney Calhoun that the drug charge had been brought because of "politics" and that the blood test on which it was based was "nonsense." Attorney Calhoun was quoted as saying, "I've never used cocaine. Never." Attorney Calhoun acknowledged that the article quoted him correctly.

Following his no contest plea to the possession charge, sentence was withheld and he was placed on two years' probation. While on probation, he continued to use cocaine, testing positive only two weeks after he had signed probation rules requiring that he not use drugs. For that violation, he was jailed for nine days. Upon his release, he entered a treatment program as ordered and, after completing 89 days of the 90-day program, he was discharged with a "poor" prognosis for long-term recovery.

Six months later, in mid-October, 1993, Attorney Calhoun began smoking crack cocaine. At the same time, he sought treatment from his physician for tenderness in his right chest and, subsequently, with an infection in that location. He received several percocet prescriptions in the course of treatment.

The following month, Attorney Calhoun asked an acquaintance, who was a cocaine addict, to inflict wounds to his chest for purposes of sexual gratification. The woman did as requested, expecting and receiving cocaine from him in return. While under oath during the Board's investigation of this matter in September, 1994, Attorney Calhoun denied having intentionally inserted any foreign matter into his chest or instructing or asking anyone else to do so.

In November, 1993, at the Board's request, Attorney Calhoun was seen by a physician who was to prepare a report for the Board regarding his fitness to practice law. Despite his positive test for cocaine the preceding April and his use of crack cocaine in October, Attorney Calhoun told the physician that he had stopped using cocaine in early April, 1993 and that his frequent drug screens since then had been negative.

Attorney Calhoun's use of crack cocaine was detected by a drug screen on November 23, 1993, and he was jailed for four days for probation violation. Upon his release, he did not pursue treatment but did return to his physician with another infection, for which he again received a prescription for percocet. On January 19, 1994, Attorney Calhoun smoked crack cocaine, possibly for the last time, at his home. The following day, a person who had been driving a car leased to Attorney Calhoun was involved in an accident and a subsequent search of Attorney Calhoun's home produced drug paraphernalia. Attorney Calhoun was

then arrested for probation violation and jailed. His probation was revoked the following February.

In early March, 1994, Attorney Calhoun was charged with two felony counts of delivery of cocaine base and five misdemeanor counts of possession of drug paraphernalia. Because of his earlier conviction, he was charged as a repeater. The felony counts were based on the statement of a citizen informant that she had used cocaine base with Attorney Calhoun at his home at least twice in November, 1993 and that on both occasions he gave her the cocaine base in exchange for her inflicting wounds on his chest for purposes of sexual gratification.

At the sentencing hearing held in March, 1994 on Attorney Calhoun's earlier misdemeanor possession conviction, the court imposed but stayed the maximum one-year jail sentence with the condition that Attorney Calhoun enter an inpatient treatment program. Attorney Calhoun's lawyer had submitted a letter to the court from a friend of Attorney Calhoun, a professor of psychiatry, offering to oversee his treatment in California. In addition to the treatment for addiction, Attorney Calhoun was to undergo surgery related to his chronic infections and a letter presented to the court in the stipulation for the stay of sentence indicated that Attorney Calhoun believed his medical condition was related to a shrapnel injury received during the war.

At about the same time, Attorney Calhoun pleaded no contest to the two felony counts of delivery of cocaine base and the drug paraphernalia charges were dismissed. The consent of the court in which that case was pending was needed for Attorney Calhoun to go to California for treatment and the presiding judge amended bail to include the provision that Attorney Calhoun

was permitted to go to California to participate in an inpatient treatment program.

Notwithstanding the court's specifications of inpatient treatment, the referee found that Attorney Calhoun never entered an "inpatient" treatment program in California. Rather, from April 19 to June 2, 1994, he resided at a hotel-type guest facility on a university campus and commuted daily to a chemical dependency center, where he participated in its day-care program. While that center offered an inpatient treatment program with 24-hour supervision, the specialist treating Attorney Calhoun described him as a participant in the center's "out-patient" program.

Attorney Calhoun was discharged from day care treatment on May 23, 1994, and was under no formal supervision until he moved to a sober living center 10 days later. He returned to Wisconsin the following month.

While in California, Attorney Calhoun obtained several prescriptions for percocet from the treatment specialist based on his representation that he needed the medication for arthritis pain. The prescribing physician believed he was Attorney Calhoun's only source of percocet while in California, unaware that the psychiatrist who had referred Attorney Calhoun had given him a prescription for the drug. One day after he returned to Madison, Attorney Calhoun obtained a prescription for percocet from his physician for pain in his chest.

Attorney Calhoun never told the judges presiding in his two criminal cases, the prosecutor or the sheriff's department that he had not been in an inpatient drug treatment in California. He gave the prosecutor a letter he had written in which he described himself as an "inpatient trainee" at the treatment center. He also

provided the prosecutor a printed "daily schedule" on which he had written, "My schedule — not much open time." The schedule, however, did not describe the daily routine of a day-care participant but detailed the regulation of participants in the inpatient program, including "wake up" and "lights out" times, a medication distribution schedule, visiting hours and restrictions on telephone and television use.

During a deposition in this disciplinary proceeding, Attorney Calhoun testified that he was at the California treatment center "as an inpatient," asserting, "You never left the building except when you were taken to AA meetings or NA meetings or CA meetings." He also stated, "Every day that I was there I was under constant supervision, absolutely. . . . There was still a fence around [the treatment facility], a locked fence, very high. You couldn't get out or anything like that." At the sentencing hearing held September 23, 1994 on his felony convictions, Attorney Calhoun made no response to testimony and his attorney's assertion to the court that he had received inpatient treatment in California.

Also in connection with the sentencing hearing, letters to the court from the referring psychiatrist and from the surgeon who evaluated Attorney Calhoun referred to his having suffered a shrapnel injury from World War II. The sentencing judge, noting as a mitigating factor that Attorney Calhoun had been "wounded in the service of his country," withheld sentence on the felony conviction and placed Attorney Calhoun on probation for three years, with six months in jail, concurrent with his previous sentence, fined him $7520 and ordered him to perform community service. In fact, Attorney Calhoun had not received a shrapnel wound during the war.

On the basis of the foregoing facts, the referee made the following conclusions. By his possession and use of cocaine and his delivery of cocaine base, Attorney Calhoun engaged in criminal acts that reflect adversely on his honesty, trustworthiness and fitness as a lawyer in other respects, in violation of SCR 20:8.4(b).[1] He engaged in conduct involving dishonesty, deceit and misrepresentation, contrary to SCR 20:8.4(c),[2] by the following: (1) telling the magazine reporter he had never used cocaine, knowing that statement was untrue, (2) making material misstatements to the physician retained by the Board regarding his drug use and drug tests, (3) breaching the stipulation, order and bail conditions permitting him to leave Wisconsin to undergo inpatient treatment in California and giving the prosecutor's office materials stating or implying that he had spent time in such a treatment program and so testifying under oath at his deposition, (4) representing to medical care providers, the prosecutor and two circuit courts that a chest problem for which he underwent surgery in California had been caused by a shrapnel injury, (5) denying under oath

[1] SCR 20:8.4 provides, in pertinent part:
**Misconduct**
It is professional misconduct for a lawyer to:

. . .
(b)    commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
[2] SCR 20:8.4 provides, in pertinent part:
**Misconduct**
It is professional misconduct for a lawyer to:

. . .
(c)    engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

673

that he ever intentionally inserted any foreign object into his chest or requested anyone else to do so, (6) denying under oath that he had ever abused percocet and stating that no one had ever said he had done so.

As discipline for that misconduct, the referee recommended that the court suspend Attorney Calhoun's license to practice law for three years, effective the date of the court's order, and impose the following conditions on him during the suspension: submission, as the Board may direct, to random, periodic urine screenings for the presence of controlled substances, including percocet to the extent it may exceed any prescribed dosage, with reports of those tests furnished to the Board at its request; participation in at least thrice-weekly outpatient 12-step programs, such as Alcoholics Anonymous, Narcotics Anonymous or Cocaine Anonymous, with reports verifying his attendance provided to the Board at its request; regular counseling, including group counseling, by a certified alcohol and drug abuse counselor.

In making that disciplinary recommendation, the referee rejected the Board's position that because of the mitigating factors of Attorney Calhoun's age, lack of prior discipline, the criminal penalties imposed on him, and his poor health, a one-year license suspension retroactive to the date of the summary suspension should be recommended. In addition to the seriousness of the misconduct, the referee considered numerous aggravating factors, including that the felony convictions for drug-related conduct occurred while Attorney Calhoun was on probation from a misdemeanor possession conviction, his extensive, intense and increasingly serious drug use for 10 years, his 20-year history of prescription drug abuse, his repeated misrepresentations, some under oath and after his license to practice law

had been suspended, and the manner in which wounds were inflicted on him in order for him to obtain prescription drugs.

Further, the referee found no evidence during the course of the disciplinary proceeding that Attorney Calhoun has acknowledged the seriousness of his misconduct or is remorseful for it. Moreover, the referee noted, he repeatedly rejected treatment opportunities and recommendations, thereby establishing a pattern of failing to acknowledge the seriousness of his drug addiction and make progress to remedy it. The referee observed that criminal convictions, jail confinement and a summary license suspension have not been sufficient to deter him from repeating and escalating his misconduct.

Contrary to Attorney Calhoun's contention in this appeal, the referee gave appropriate consideration to several mitigating factors, including his age, his poor health and the lack of apparent harm to any of his clients. In the referee's opinion, the mitigating effect of those factors led her to recommend a license suspension rather than revocation.

Attorney Calhoun also argued that the misrepresentations he made concerning drug use and the cause of his infections were nothing more than an aspect of denial of his drug addiction and should not be considered separate misconduct. He further contended that he did not intend to mislead by referring to his California treatment experience as inpatient treatment. In that regard, Attorney Calhoun appended to his brief and asked the court to consider in this appeal facts that were not part of the record to which the parties stipulated and which served as the basis of his no contest plea and of the referee's report. The court has not considered any facts or assertions made by Attorney

Calhoun that are not contained in the record in this proceeding.

None of Attorney Calhoun's arguments has merit. Moreover, we are unpersuaded by the arguments of the Board that the protection of the public and the deterrence of other attorneys from engaging in misconduct similar to Attorney Calhoun's can be achieved by a license suspension of only one year, made retroactive to the date of his summary suspension. The seriousness of Attorney Calhoun's misconduct, its nature and extent, and his demonstrated need for and difficulty in pursuing treatment and rehabilitation call for more severe discipline—the three-year license suspension recommended by the referee. We make that license suspension retroactive to the commencement of the summary suspension we ordered at the outset of this proceeding, accepting the Board's position that retroactivity would be appropriate in a case where, as here, the Board seeks the summary suspension of an attorney's license following a criminal conviction for conduct that would warrant a substantial license suspension but not revocation.

IT IS ORDERED that the license of Attorney Eugene S. Calhoun to practice law in Wisconsin is suspended for a period of three years, commencing September 20, 1994.

IT IS FURTHER ORDERED that Eugene S. Calhoun shall comply with the conditions recommended by the referee and set forth herein.

IT IS FURTHER ORDERED that within 60 days of the date of this order Eugene S. Calhoun pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time,

the license of Eugene S. Calhoun to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Eugene S. Calhoun comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.